UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JUAN CARLOS GARCIA-ALEMAN, § § Petitioner, § § v. § § WARDEN BOBBY THOMPSON § South Texas Ice Processing Center; § PAMELA BONDI, Attorney General of the § United States; MIGUEL VERGARA, Field § Office Director, Ice San Antonio; § TODD M. LYONS, Acting Director, Ice; § and SECRETARY KRISTI NOEM, § Department of Homeland Security, § § Respondents. § | SA-25-CV-886-OLG (HJB) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Petitioner Juan Carlos Garcia-Aleman's Petition for Writ of Habeas Corpus and Immediate Release from Unlawful Detention (Docket Entry 2), which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1). (*See* Docket Entry 4.) For the reasons set out below, I recommend that the petition be **GRANTED IN PART** and **DENIED IN PART**, and that Petitioner immediately be released from Respondents' custody.

**I.      Jurisdiction.**

The Court has jurisdiction pursuant to 28 U.S.C. § 2241. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2441, confers jurisdiction upon the federal courts to hear . . . . challenges to the lawfulness of . . . . continued

custody after a deportation order ha[s] become final.") (emphasis omitted).  The undersigned has jurisdiction to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b).

**II.     Background.**

The relevant facts in this case are largely undisputed.  Petitioner is a citizen of Mexico. (*See* Docket Entry 2, at 1; Docket Entry 7, at 2.)  It is unclear when he entered the United States, but it is undisputed that he did so unlawfully, and that was ordered removed to Mexico on April 7, 1999.  (*See* Docket Entry 7-1, at 1.)  In 2002, after Petitioner had unlawfully re-entered the United States, his 1999 removal order was reinstated and he was again removed to Mexico.  (*See* Docket Entry 18, at 32–33.)  Sometime thereafter, Petitioner unlawfully re-entered the United States for the third time, and his removal order was once again reinstated.  (*See id.*)  This time, however, before he was removed, Petitioner sought withholding of removal, claiming that he feared for his life if he were to be returned to Mexico.  (*See id.*)  On January 28, 2013, an immigration judge granted Petitioner's request for withholding of removal to Mexico under the Convention Against Torture ("CAT").  (*See* Docket Entry 2-2, at 2.)

Petitioner remained in custody after the withholding relief was granted; during this time, Immigration and Customs Enforcement ("ICE") failed to secure Petitioner's removal to a third country.  (*See* Docket Entry 7-1, at 1.)  Accordingly, on March 7, 2013, ICE issued an Order of Supervision ("OSUP"), conditionally releasing Petitioner until such time that his removal could be effectuated.  (*See id.*)  For more than a decade thereafter, Petitioner lived and worked in the United States while complying with the conditions of his OSUP.  (*See* Docket Entry 2-2, at 4–5 and Docket Entry 7-1, at 3.)  During this time, he married a United States citizen (*see* Docket Entry 2-2, at 12) and started a family with her (*see id.* at 8, 10.)

One of Petitioner's OSUP conditions was that he check in periodically with ICE authorities. (*See* Docket Entry 7-1, at 1, 3.) At his most recent check-in on June 5, 2025, ICE presumably revoked Petitioner's OSUP,[1] taking him back into custody pending his removal from the United States. (*See* Docket Entry 7-1, at 3; Docket Entry 21, at 2.)

ICE apparently did not provide Petitioner with an official explanation for his re-detention when he was taken into custody. (*See* Docket 18, at 34, 43.) At the evidentiary hearing before the undersigned, Petitioner testified that he was told by officials at the time that "their hands were basically tied. . . . [by the] new administration." (*Id.* at 60.) An ICE official testified that Petitioner's OSUP was revoked due to "changes in circumstances"—*viz.*, that "in this [new] administration," ICE has "been able to effectuate third country removals" with greater regularity. (*See id.* at 23, 34.) Contrary to the official's assertion, ICE has not had any success in securing Petitioner's removal to a third country. (*See* Docket Entry 22, at 1.) To date, ICE has sought permission to send Petitioner to Honduras, El Salvador, Guatemala, Nicaragua, Brazil, and Ecuador, and all six countries have refused to accept him—either explicitly or by ignoring the request. (*See id.*; Docket Entry 18, at 17.)

Petitioner filed the instant petition on July 22, 2025. (*See* Docket Entry 2.) Respondents have filed a response (*see* Docket Entry 7), and Petitioner has replied (Docket Entry 10). The undersigned held an evidentiary hearing on October 17, 2025 (*see* Docket Entry 17), after which it permitted the parties to file supplemental briefing and a joint advisory as to the status of Respondents' ongoing removal efforts. (*See* Docket Entry 17.) The parties filed their advisory, confirming that, as noted above, there were as yet no countries willing to accept Petitioner. (*See*

---

[1] Respondents have failed to produce an actual copy of any order revoking Petitioner's OSUP. (*See* Docket Entry 21.)

Docket Entry 22.) And while Petitioner filed his supplemental brief (*see* Docket Entry 21), Respondents did not file additional briefing.

**III.   Discussion.**

Relying on *Zadvydas*, Petitioner seeks immediate release and reinstatement of his OSUP, arguing that his re-detention violated his right to due process inasmuch as he has complied with the conditions of his OSUP for more than a decade, during which time immigration authorities have failed to secure his removal to a third country. (*See* Docket Entry 2, at 4–5; Docket Entry 10, at 1–2.) He argues that his re-detention was, and is, unlawful absent "any indication that removal will occur in the reasonably foreseeable future." (*See* Docket Entry 2, at 4–5.) Petitioner also asks for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (*See id*.)

Respondents argue (a) that the OSUP revocation was proper because Petitioner violated the OSUP's conditions, (b) that Petitioner's due process challenge to his re-detention is either premature or otherwise invalid, and (c) that Petitioner is not entitled to fees and costs under the EAJA based on Fifth Circuit precedent. (*See* Docket Entry 7, at 1 n.4, 3–6.) Each of Respondents' contentions are addressed below.

   **A.   *Whether Petitioner Violated His OSUP.***

The first point of contention is whether Petitioner violated his OSUP. Such a violation would justify revocation of the OSUP and re-detention. *See* 8 C.F.R. § 241.13(i)(1) (providing that any "alien who has been released under an [OSUP] . . . who violates any of the conditions of release may be returned to custody").

Respondents argue that Petitioner violated the following two conditions of his OSUP:

- That he provide the INS with written copies of requests to Embassies or Consulates requesting the issuance of a travel document

4

- That he provide the INS with written responses from the Embassy or Consulate regarding your request.

(Docket Entry 21, at 27; see Docket Entry 7, at 3.)  There is no evidence in the record that Petitioner sent document requests to foreign countries and then failed to provide Respondents with written copies of said requests.  Nor is there any evidence in the record that Petitioner received responses from foreign countries regarding such requests and then failed to provide written copies to Respondents.  Counsel for Respondents, however, appears to interpret the OSUP to require Petitioner not just to provide copies of written third-county requests, but to make such requests in an unspecified number and at unspecified intervals.  (*See* Docket Entry 18, at 33.)

Contrary to this view, the language of the OSUP does not require that Petitioner send out third-party requests.  (*See* Docket Entry 21, at 27.)  If it did, Petitioner's OSUP would presumably have been revoked on this basis at some time during his decade of release.  (*See* Docket Entry 7-1, at 3.)  In any event, testimony at the hearing made clear that ICE's actual reason for revoking Petitioner's OSUP was not any violation on Petitioner's part, but "changes in circumstances"—*i.e.*, that, "[w]ithin the last year," ICE has "been able to effect[ ] third country removals."  (*See* Docket Entry 18, at 34.)  And even that is putting it generously; when ICE re-detained Petitioner, the only explanation given was that, "because there was a new administration, . . . their hands were basically tied."  (*See id.* at 60.)

Accordingly, Petitioner's OSUP could not be revoked on the grounds that he violated a condition pursuant to 8 C.F.R. § 241.13(i)(1).  Re-detention is permitted, however, if changes in circumstances made his removal to a third country significantly likely in the reasonably foreseeable future.  *See* 8 C.F.R. § 241.13(i)(2).  That issue is addressed in conjunction with the due process discussion below.

B.  *Whether Petitioner's Re-Detention Violates Due Process.*

The limits on detention pending deportation are well settled. "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. 1231(a)(1)(A)). During the 90-day removal period, detention is mandatory, *see id.* (citing 8 U.S.C. § 1231(a)(2)); however, "[u]pon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision." *Abuelhawa v. Noem*, No. 4:25-cv-04128, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (citing 8 U.S.C. § 1231). "Although the statute does not specify a time limit on how long DHS may detain an alien in the post-removal period," *see Guzman Chavez*, 594 U.S. at 529, the Supreme Court has held that post-removal detention may not last longer than what is "reasonably necessary to bring about the alien's removal," *see Zadvydas*, 533 U.S. at 689. Recognizing that not all reasonably foreseeable removals can be accomplished within the three-month removal period, the Court has generally held that such detentions are "presumptively reasonable" for up to "six months." *Id.* at 701. After that point, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

Respondents have argued that Petitioner is lawfully detained either in the 90-day removal period or the six-month presumptively reasonable period recognized in *Zadvydas*. (*See* Docket Entry 7, at 4–6.) Alternatively, they argue that Petitioner fails to show that there is no significant likelihood of his removal in the reasonably foreseeable future. (*Id.* at 6–7.) These arguments are addressed below.

6

1. *Applicability of the 90-Day or Six-Month Detention Periods.*

Respondents contend that Petitioner is lawfully detained either under the 90-day removal period or the presumptively reasonable six-month *Zadvydas* period. (*See* Docket Entry 7, at 4.) Both these contentions fail.

Respondents are correct that "[a]n alien is not entitled to habeas relief under *Zadvydas* before the removal period has expired." *Diaz-Ortega v. Lund*, No. 1:19-CV-670-P, 2019 WL 6003485, at *10 (W.D. La. Oct. 15, 2019), *report and recommendation adopted*, No. 1:19-CV-670-P, 2019 WL 6037220 (W.D. La. Nov. 13, 2019). However, that argument is inapplicable here. As other courts have explained, a re-detention after release on an OSUP "is not your typical first round detainment of an alien awaiting removal." *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025). When an immigrant "was previously detained, then released on supervised release, . . . his 90-day removal period has long expired." *See Balouch v. Bondi*, No. 9:25-CV-216-MJT, 2025 WL 2871914, at *2 (E.D. Tex. Oct. 9, 2025). This point is made clear by the OSUP itself: "Because the Service has not effected your deportation or removal *during the period prescribed by law*, it is ordered that you be placed under supervision and permitted to be at large under the following conditions. . . ." (*See* Docket Entry 7-1, at 1 (emphasis added).)

Respondents' post-removal-period argument fares no better. They assert that Petitioner's *Zadvydas* claim is premature because his "post-order detention is presumptively reasonable for at least six months." (Docket Entry 7, at 5.) Contrary to this assertion, "nothing in *Zadvydas* precludes a challenge to detention before the presumptive[] . . . period has elapsed." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *9 (S.D. Tex. Sept. 26, 2025); *see Puertas-Mendoza v. Bondi*, No. SA-25-CA-890-XR, 2025 WL 3142089, at *2 (W.D. Tex. Oct. 22, 2025)

7

("*Zadvydas* recognized a presumptively—not categorically—reasonable period of detention.") (citation modified). "[O]nce removal is no longer reasonably foreseeable," even within the presumptive period, "continued detention is no longer authorized." *Puertas-Mendoza*, 2025 WL 314089, at *2 (quoting *Zadvydas*, 533 U.S. at 699–700).

In any event, even if the six-month presumption applied when Petitioner first filed his habeas petition, it no longer does. "[T]he *Zadvydas* period is cumulative," which means Petitioner's pre-OSUP detention and his recent re-detention must be aggregated in calculating whether the presumptive period has expired. *See Abuelhawa*, 2025 WL 2937692, at *4 (collecting cases). After Petitioner was granted CAT withholding, he was detained for more than a month prior to his OSUP (*see* Docket Entry 7-1, at 1); his re-detention since June 5, 2025, has already lasted well over five months. In other words, any presumptive period has expired.

2. *Significant Likelihood of Removal in the Reasonably Foreseeable Future.*

Respondents argue that Petitioner has failed to meet his burden of providing "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (*See* Docket Entry 7, at 6.) This argument misapplies the burden of proof under applicable immigration regulations, and it fails in any case.

As to the burden of proof, it must be kept in mind that this is a *re*-detention based on revocation of Petitioner's OSUP. "After *Zadvydas*, the immigration regulations were revised to implement administrative review procedures for those aliens detained beyond the removal period, *including those who are re-detained upon revocation of their* [*OSUP*]." *Escalante*, 2025 WL 2206113, at *3 (emphasis added). The regulation for re-detentions provides that "the Service may revoke an alien's [OSUP] . . . and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be

8

removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Under this regulation, "it is [Respondents'] burden to show a significant likelihood that [Petitioner] may be removed." *See Escalante*, 2025 WL 2206113, at *3 (citing cases); *Balouch*, 2025 WL 2871914, at *2 (same); *see also, e.g.*, *Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations . . . place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *4 (E.D. Cal. Nov. 14, 2025) ("[W]hen ICE revokes the [OSUP] of a noncitizen who has been ordered removed to effectuate that noncitizen's removal, it is [ICE's] burden to show a significant likelihood that the alien may be removed.") (citation modified); *cf. Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation") (citing 8 C.F.R. § 241.13(i)(2)).

Even if the burden belonged to Petitioner, he has met it, and Respondents have failed to rebut it. As a general matter, "[v]ery few people subject to withholding of removal or CAT relief are removed from the United States." *Puertas-Mendoza*, 2025 WL 3142089, at *3. Respondents practically conceded as much in open court, stating that third-country removals are "not quick," and even when they are successful, "they're taking a while." (*See* Docket Entry 18, at 23–24.) "And that is not simply a matter of United States policy—foreign governments routinely deny requests to receive people who lack a connection to the would-be receiving country." *Puertas-Mendoza*, 2025 WL 3142089, at *3 (citation modified). Petitioner's case bears this out: the parties' November 17, 2025, joint advisory indicated that Respondents have been rebuffed by all six of the countries they have asked to accept Petitioner since his re-detention. (Docket Entry 22,

9

at 1.) And Respondents have given no indication that they have requested any other countries to accept Petitioner, let alone that such countries would be more likely to accept him.

"But even if ICE had outstanding requests with such countries, which they do not, that fact alone would be insufficient to show that his removal is likely to occur in the reasonably foreseeable future." *Medellin Martinez v. Bondi, et al.*, No. SA:25-CV-1319-OLG, at 5 (W.D. Tex. Nov. 21, 2025). The lack of likely removal is also shown by the absence of any "indication that the Government attempted to remove Petitioner during the [*twelve*] *years* between his [reinstated] order of removal and his detention in 2025." *See Puertas-Mendoza*, 2025 WL 3142089, at *4. And finally, due to "administrative oversight," ICE failed to even notify Petitioner that his OSUP had been revoked until August 11, 2025—more than two months after he was taken back into custody. (*See* Docket 18, at 34, 43.) It seems that, if changed circumstances had actually made quick removal more likely, ICE would have explained this to Petitioner sometime during the first 60 days of his detention. Instead, the only explanation ICE provided to Petitioner for his re-detention was cursory—that "their hands were basically tied . . . [by the] new administration." (*Id.* at 60.)

"Taken together, the rareness of removal to a third country, . . . the long period of time between [Petitioner's] removal order and his detention, the initial lack of any explanation for [Petitioner's] detention in 2025, and the cursory explanation ultimately provided show that [Petitioner's] removal is not reasonably foreseeable." *See Puertas-Mendoza*, 2025 WL 3142089, at *4; *see also Villanueva*, 2025 WL 2774610, at *10 (granting *Zadvydas* relief where detainee had withholding removal to Mexico, Government had not tried to lift withholding order or to remove him for eight years, and no changed circumstances made removal reasonably foreseeable). In short, "Respondents have not demonstrated that any potential third country is likely to accept

10

Petitioner."  *See Medellin Martinez*, SA:25-CV-1319-OLG, at 5.  "In the absence of such evidence, Respondents have failed to meet their burden," *id.*, and Petitioner is entitled to habeas relief under § 2241.

### C. *Whether Petitioner Is Entitled to EAJA Fees and Costs.*

As previously mentioned, Petitioner seeks an award of attorney's fees and costs under the EAJA.  (See Docket Entry 2, at 4–5.)  Although the undersigned recommends granting of habeas relief in this case under § 2241, the Fifth Circuit has held that the EAJA "does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions."  *Barco v. Witte*, 65 F. 4th 782, 785 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 553 (2024).  Accordingly, Petitioner is not entitled to EAJA relief, and his petition should be denied in that regard.

### IV. Conclusion and Recommendation.

Based on the foregoing, I recommend that Petitioner's Petition for Writ of Habeas Corpus and Immediate Release from Unlawful Detention (Docket Entry 2) be **GRANTED IN PART**, and that Respondents be ordered to "**RELEASE** Petitioner under conditions substantially similar to those contained in his prior OSUP."  *See Medellin Martinez*, SA:25-CV-1319-OLG, at 6; *see also Escalante*, 2025 WL 2206113, at *4 (ordering that re-detained petitioner be released "subject to an order of supervision in accordance with 8 C.F.R. § 241.5").  I further recommend that Petitioner's request for attorney's fees and costs under the EAJA be **DENIED**.

### V. Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Report and Recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Servicing LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on November 24, 2025.

Henry J. Bemporad
United States Magistrate Judge